STATE OF MAINE

AROOSTOOK, ss

SUPERIOR COURT

DOC. NO. CARSC-CV-17-031

GERALD HOTCHKISS )
And BERTHA HOTCHKISS )
       Plaintiffs )
vs. )
                             )
THOMAS R. PELLETIER )
       Defendant )
                             )
                             )

ORDER and
DECISION

# INTRODUCTION

On April 13, 2017, Plaintiffs Gerald and Bertha Hotchkiss (collectively referred to as the Hotchkiss') filed a three-count civil complaint against Defendant Thomas Pelletier, each count alleging a claim of trespass. Trial was held on January 7, 2019. At trial, testimony was received from Gerald Hotchkiss (hereafter Gerald), Bertha Hotchkiss (hereafter Bertha), Thomas Pelletier (hereafter Thomas), Ervin Jandreau, Delbert Daigle, and Roger James Simon. And the following exhibits were admitted[1]:

---

[1] A number of additional exhibits were offered by Plaintiffs, including Google earth aerial photographs and surveys, which were objected to and not admitted. The Google earth photographs were not admitted due to lack of foundation, and the surveys were not admitted due to hearsay and the surveyor who prepared them not being listed as an expert to testify at trial.

Plaintiffs' Exhibits

Ex. 1-deed to the Hotchkiss' for the "Henderson" lot;

Ex. 2- deed to the Hotchkiss' for the "Michaud" lot;

Ex. 5- photographs of ditch and removed culvert;

Ex. 6-photographs of excavation on the Henderson lot;

Ex. 8- aerial photograph of Henderson lot and surrounding area;

Ex. 9- aerial photograph of Henderson lot and surrounding area;

Ex. 16- photographs of Michaud lot; and

Ex. 17- deed to Thomas Pelletier property;

Defendant's Exhibits

D. Ex. 8- photograph of excavation work at Henderson lot;

D. Ex. 9- photograph of removed culvert;

D. Ex. 10- photograph of house removed from Henderson lot; and

D. Ex. 12- photograph of car on Henderson lot.

In addition, Plaintiffs' Ex. 3, which is a survey by Michael Cyr of the Henderson lot and surrounding area was introduced and utilized as a demonstrative aid; it was not admitted formally and its content in the context of survey information was not admitted or to be considered.

2

## CLAIMS ASSERTED

In Count I, the Hotchkiss' allege that Thomas trespassed onto the Henderson and Michaud lots and took therefrom gravel and soil. In Count II, the Hotchkiss' allege Thomas trespassed onto the Henderson lot and removed therefrom a culvert and otherwise blocked their access to the Henderson lot. And in Count III, the Hotchkiss' allege Thomas trespassed, or caused a trespass, onto the Henderson lot for installation of electrical transmission poles.

At the conclusion of the Hotchkiss' presentation of their case in chief, Pelletier moved for judgment as a matter of law pursuant to M.R.Civ. P. 50(d). After argument of counsel, the court granted the motion with respect to Counts I and III. The basic standard for a judgment as a matter of law is that viewing the evidence and all reasonable inferences therefrom most favorably to the party opposing the motion, a factfinder could not reasonably find for that party on an issue that under the substantive law is an essential element. Charles Harvey, *Maine Civil Practice,* §50:2. In other words, a motion for a judgment as a matter of law should not be granted if any view of the evidence could sustain a verdict for the opposing party. *Id.* As for Count I, there was simply no evidence that Thomas Pelletier went onto either the Hotchkiss' Henderson lot or Michaud lot and removed gravel or soil. The Hotchkiss' argument seemed to be that because Thomas lived adjacent to the

3

lots, and he had recently hauled several loads of gravel to his camp lot, that he must have removed the gravel from their property. But as the court indicated on the record, although there was evidence of gravel/soil being dug and removed from the Henderson lot, there was simply no evidence that Thomas was responsible, nor evidence from which it could be reasonably inferred that he removed gravel or soil from that lot. And as for the Michaud lot, the Hotchkiss did not establish that anything had actually been removed from the lot. Their assertion was the Michaud lot now "seemed to be lower", but there was no evidence from which the court could find that anything had actually been removed. But more importantly, there was no evidence that Thomas had trespassed onto the Michaud lot and taken anything.

As for Count III, there is no dispute that Maine Public Service installed electric transmission poles on the Henderson lot to provide service to a garage Thomas Pelletier owned on his property situated to the south. But other than Thomas making a request of Maine Public to provide electric service to his garage, there was no evidence that Thomas was involved in the direction or deciding upon the location where the poles be installed. The electrical poles were owned and installed by Maine Public. Thomas was not charged by Maine Public for the installation. It is generally known that electric transmission lines and poles are the property of the

4

service company, who then charges a fee to the end-user for the electricity consumed. The court is aware that there are instances where one can be liable for a trespass committed by another. See 2004 *Maine Tort Law, §5.10.* But this is not the case where Thomas Pelletier caused Maine Public Service to commit a trespass. As discussed on the record, Thomas merely placed an order with Maine Public for service to be installed at his garage, but played no role in the installation or the decision where to set the poles. Accordingly, for the reasons articulated on the record, the motion was granted as to Counts I and III, and judgment is granted to the Defendant on those two counts.

## COUNT II-TRESPASS, REMOVAL OF CULVERT

Count II also involves an allegation of trespass onto the Henderson lot. The court will now make more detailed findings. The Hotchkiss' acquired the Henderson lot in 1993. See Ex. 1. Per the deed, the lot is described as:

> Bounded on the north by Rout #161, the main highway between Fort Kent and Allagash; bounded on the south by the right of way of the Bangor and Aroostook Railroad Company; bounded on the east by land of Ronald Taggett and Flossie Ouellette; and bounded on the west by land of Vernal Nadeau. See Ex. 1.

The deed to the Henderson lot also contains an exception for a private right of way which extends in a southerly direction from the southerly bound of land of Ronald

5

Taggett to the Bangor and Aroostook Right of Way, "..said right of way runs along the easterly edge of the premises hereby conveyed." See Ex.1.

Both Gerald and Bertha testified that at some point after purchasing the Henderson lot, they acquired the "..Taggett lot..", which was generally located to the east of the Henderson lot. But a copy of the deed to the Taggett lot was not introduced into evidence and its actual location relative to the Henderson lot cannot be determined. Gerald and Bertha further testified they sold a portion of the Taggett lot, and retained a portion, to even-out the easterly boundary of their Henderson lot. But again, what was conveyed and what was retained from the Taggett lot is unknown from the record presented. Without a survey or expert testimony, and without copies of the deeds related to the Taggett lot, the court is unable to find by a preponderance of the evidence the location of the easterly boundary of the so-called Henderson lot.[2]

At this point the court must briefly discuss Plaintiff's Exhibit 3. Exhibit 3 is a Boundary Survey prepared by Michael Cyr. But as previously indicated, Michael Cyr was not listed as an expert witness to testify at trial and Ex. 3 was admitted

---

[2] Reference to the eastern boundary of the Henderson lot includes the retained portion of the Taggett lot, wherever that may be situated.

solely as a demonstrative aid and its content in the context of containing survey information was not admitted. And although Ex. 3 is useful in understanding the general locus of the so-called Henderson lot, the survey does not identify what portion is the original Henderson lot and what portion is the retained parcel from the Taggett lot.

Soon after they purchased the Henderson lot, the Hotchkiss' made a plan to build on it a new home. An existing home structure was removed. The primary access to the Henderson lot was historically directly from Rt. 161. But the Hotchkiss' were intending to build their new home on higher ground on the southern side of the property. To gain more direct access to the southern portion of the lot, the Hotchkiss' asked Thomas to install a culvert and driveway entrance off from the private road/way that extended southerly to the Heritage Trail. The Heritage Trail is the former Bangor and Aroostook Railroad right of way. Thomas did in fact install a culvert, somewhere in the shoulder or ditch of the private road/way, to create a driveway to the Henderson lot.

After the culvert and driveway was installed by Thomas, the Hotchkiss' hired a contractor and a hole for a foundation was dug. But they encountered conflicts with the construction so the plan to construct a new home was abandoned.

For the next several years the culvert and driveway remained, and the Hotchkiss' utilized it from time to time when they were in the area to gain access to the Henderson lot. But in 2014, Thomas removed the culvert. Thomas asserts he removed it because it was rusted out, it no longer carried run-off water and was useless. But his removal of the culvert was also coincident with the time period when personal conflict developed between he and Bertha, who are half-siblings. The Hotchkiss' assert Thomas committed trespass by coming onto their property and removing the culvert. To determine whether a trespass was committed, the location of the road and the location of the culvert with respect to the road and/or the Henderson lot (including the retained Taggett lot) must be determined.

The private road/way extends from Rt. 161 in a southerly direction to the Heritage Trail. A portion of it is referred to and known as Pelletier Avenue. But Pelletier Avenue seems to be simply the private way or driveway for access to Thomas Pelletier's home, his son Buddy Pelletier's home, and also access to the "Taggett property" which was once owned by the Hotchkiss' but subsequently sold. The private road/way continues southerly, and intersects with the Heritage Trail. Across from Heritage Trail, Thomas Pelletier owns additional property. He utilizes this private road/way to gain access to that property situated southerly of the Heritage Trail.

The Hotchkiss' imply that this private way is the same private right of way referenced and excepted in their deed to the Henderson lot. See Ex.1. That could be the case, but such a finding is not entirely clear from the record presented, and cannot be found by a preponderance of the evidence.

Thomas testified he owns the rights to the private road/way, but that was not established with any certainty. The Hotchkiss do not claim ownership of the road, but they do claim rights to use it. But that was not established by a preponderance of the evidence, either. In fact, their deed to the Henderson lot does not convey to them any rights of use in the right of way, if in fact it is the same right of way. In addition, there was no expert evidence, nor sufficient deeds nor surveys admitted, from which it can be established who owns the road, who has rights thereto, and most importantly, where it is physically located. From the evidence, it can be inferred that the Hotchkiss' own property located generally to the west of the private road/way, and that Thomas Pelletier owns property located generally to the east. But the ownership and location of the private road/way itself, and rights thereto, is unclear from the evidence presented.

Again, further discussion of Ex. 3 is warranted. Exhibit 3 does show as a hashed line (---) a private road/ way, a portion of which is generally located along the east/west boundary between the parties properties. But again, Ex. 3 was admitted for demonstrative purposes only. However, were Ex. 3 admitted, confusion would remain. In the area where the private road/way approaches the Heritage Trail, a portion is on the Hotchkiss' property, but then it crosses onto Thomas Pelletier's property for some distance. Where the culvert was installed in this area is also unclear from the record presented.

Not knowing the actual ownership, location and rights in the private road/way, it is speculative to determine whether a trespass occurred. There is no dispute Thomas installed a culvert and driveway at the Hotchkiss' request so they could more directly access the southern portion of their Henderson lot. And it has been established Thomas removed the culvert in 2014. But from the evidence of this record, it has not been established on whose property the culvert was installed, or onto whose property Thomas entered when he removed it in 2014. There is neither deeds, monuments, expert testimony nor surveys admitted into evidence indicating where the boundaries are situated, where the private road/way is positioned relative

to those boundaries, nor evidence establishing precisely where the culvert was placed.

During trial, using Ex. 3 as a demonstrative aid, the Hotchkiss' pointed to the area where the culvert had been installed-the area pointed to being in the area where the private road/way approaches the Heritage Trail. But as previously discussed, even were Ex. 3 admitted for survey purposes, in the area identified, the private road/way is partially on the Hotchkiss' property and partially on Thomas Pelletier's property.

It is impossible for the court to determine whether the culvert was installed on the Hotchkiss' Henderson lot, or within the limits of the road/way, or perhaps whether it may be on Thomas Pelletier's property. Again, neither boundaries nor ownership of the road have been established, nor has where the culvert was installed relative to said boundaries been established by a preponderance of the evidence. Accordingly, where the culvert was installed could be on Thomas Pelletier's property, or it could be on the Hotchkiss' lot, or it could have been installed within the bounds of the private road/way- none of which has been established by a preponderance of the evidence. In short, it is impossible for the court to determine on whose property the culvert was installed. But for Thomas to be found liable for

trespass in removing the culvert, the Hotchkiss' must establish by a preponderance of the evidence that Thomas entered upon *their* property when removing the culvert. Having failed to do so, judgment must be found for the Defendant on Count II.

In summary, judgment is entered for the Defendant Thomas Pelletier on Counts I, II and III. Pursuant to Rule 79(a) this order shall be incorporated by reference in the Civil Docket.

Dated: February ___, 2019

Harold L. Stewart, II
Justice, Superior Court

ENTERED ON THE DOCKET 2/12/19

12